1  CROSNER LEGAL, P.C.
2  Michael T. Houchin (SBN 305541)
   mhouchin@crosnerlegal.com
3  Craig W. Straub (SBN 249032)
   craig@crosnerlegal.com
4  Zachary M. Crosner (SBN 272295)
5  zach@crosnerlegal.com
   9440 Santa Monica Blvd. Suite 301
6  Beverly Hills, CA 90210
7  Tel: (866) 276-7637
   Fax: (310) 510-6429
8  *Attorneys for Plaintiff and the Proposed Class*
9

10        **UNITED STATES DISTRICT COURT**
11    **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12  KENYA NELSON individually, and    Case No.  **'23 CV 1879 CAB SBC**
13  on behalf of all others similarly
    situated,                          **CLASS ACTION COMPLAINT AND**
14                                     **DEMAND FOR JURY TRIAL**
15              Plaintiff,
16
        v.
17
18  AMERICAN TEXTILE
    COMPANY, INC.
19
20              Defendant.
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.      Defendant American Textile Company, Inc.  ("Defendant" or "American Textile") manufactures, distributes, markets, and sells a line of bed sheet products under the Sealy brand name that are labeled as having a "1250 Thread Count." (the "Sealy Products" or "Products"). "Thread count is the number of threads in a square inch of fabric, and a higher thread count is considered superior."[1] Defendant capitalizes on consumer demand for superior bed sheet products by advertising that the Sealy Products have a high thread count. Defendant also reinforces the notion that the Products are high-quality by labeling them as being "Premium Comfort."

2.      Unfortunately, Defendant's labeling is false and misleading. Independent laboratory testing using the industry standard testing methodology revealed that the Sealy Products only have a thread count of 234.[2] Accordingly, Defendant's thread count claim is inaccurate.

3.      Defendant's false and misleading representations that the Products have a certain thread count is likely to deceive reasonable consumers. Defendant's advertising leads consumers to believe that the Products actually have a thread count of 1250 threads, and thus, are higher quality, more durable, and softer than other competing bed sheet products that have lower thread counts. Defendant charges a premium for the Products, but consumers who have purchased the Products received inferior products that have a lower than advertised thread count.

4.      Plaintiff Kenya Nelson ("Plaintiff") purchased a Sealy Product and now bring this class action seeking redress for Defendant's false advertising and deceptive conduct.

---

[1] *Are Shoppers Short-Sheeted by Thread Count?*, ABC NEWS (Nov. 22, 2002), *available at* https://abcnews.go.com/GMA/story?id=125380&page=1

[2] *See* **Exhibit A** attached hereto.

CROSNER LEGAL, P.C.

**JURISDICTION AND VENUE**

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

6.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Sealy Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

7.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one of the Products within this District.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

## PARTIES

8.     Defendant American Textile Company, Inc. is a Pennsylvania corporation that maintains its principal place of business at 10 N. Linden Street, Duquesne, Pennsylvania 15110. Defendant was the manufacturer, distributor, marketer, and seller of the Sealy Products throughout the class period.

9.     Plaintiff Kenya Nelson is a resident of San Diego County, California. Plaintiff purchased a Sealy Product during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

## FACTUAL ALLEGATIONS

### THE SEALY PRODUCTS

10.     Defendant labels the Sealy Products as having a "1250 Thread Count" as shown below:



CLASS ACTION COMPLAINT

11.    The labels of the Sealy Products lead consumers to believe that Defendant's bed sheets are high-quality and superior to other brands because of the high thread count. For example, the front label of Products state "1250 Thread Count Sheet Set" and "Premium Comfort." Defendant also makes additional labeling statements indicating the Products are high-quality and superior to competing products, such as "premium modal blend fabric," "luxuriously soft & comfortable," "superior moisture wicking," and "keeps you cool dry and comfortable" as shown below.



**TESTING REVEALS THAT DEFENDANT'S THREAD COUNT CLAIMS ARE FALSE**

12.    Independent laboratory testing shows that Defendant's thread count claims are false.[3]

13.    On October 2, 2023, a Sealy Product labeled as having a "1250 Thread Count" was sent to the IDFL Laboratory and Institute ("IDFL") in Salt Lake City, Utah for laboratory analysis. IDFL "is one of the global leaders in

---

[3] *See* **Exhibit A** attached hereto.

CROSNER LEGAL. P.C.

auditing and testing for filled textiles" and "one of the largest filled-textile laboratories in the world."[4]

14. IDFL analyzed the Product for its thread count content using the D3775 method developed by the American Society for Testing and Materials ("ASTM"). The ASTM D3775 method is an industry standard test for determining the thread count of linen products.[5] This standard requires that individual wrap ends and filling picks are counted as "single units regardless of whether they are comprised of single or plied components."

15. IDFL determined that the Product had a thread count of only 234 threads despite being labeled as having a "1250 Thread Count." Accordingly, Defendant's thread count claims are false and misleading.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE THREAD COUNT CLAIMS**

16. Consumers who purchase bed sheets rely on a product's thread counts as an indication of quality.[6] Products with higher thread counts are more expensive than products with lower thread counts.[7] This is because "[h]igher-thread-count sheets are made with finer (thinner) yarns. The more yarns that fit into a square inch, the smoother, denser, and more durable the fabric. Fine yarn is also more expensive to produce, thus resulting in pricier sheets."[8] "When it comes to buying

---

[4] https://idfl.com/about/

[5] *Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics*, available at https://www.astm.org/d3775-17e01.html

[6] *Are Shoppers Short-Sheeted by Thread Count?*, ABC NEWS (Nov. 22, 2002), *available at* https://abcnews.go.com/GMA/story?id=125380&page=1

[7] *Id.*

[8] Jackie Reeve, *What Is a Good Thread Count for Sheets?*, NEW YORK TIMES (Updated Feb. 11, 2020), *available at* https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/

bedding, the conventional wisdom goes like this: The higher a sheet's thread count, the higher the quality, and, of course, the higher the price."[9]

17.     However, some manufacturers "exaggerate the number of threads per square inch of fabric. The problem is that many threads are made up of multiple strands of yarn and manufacturers count each strand when they calculate the thread count."[10] Laboratory testing has revealed that Defendant has likewise deceptively exaggerated the number of threads per square inch in the Sealy Products. This is misleading because the industry standard way to count threads is to "count the number of threads in both the warp and filling directions" and to count plied yarns as "one yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.)" in accordance with the ASTM D3775 standard.[11]

18.     In a letter to the National Textiles Association ("NTA"), the Federal Trade Commission ("FTC") acknowledged that the ATSM D3775 method applies "standard industry practices."[12] The FTC stated that "[b]ased upon the ASTM standard, as well as the information [provided by the NTA] about standard industry practices with regard to disclosing thread count, we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[13]

---

[9] *The Truth Behind Thread Counts*, ABC NEWS (March 22, 2006), *available at* https://abcnews.go.com/GMA/Moms/story?id=1751253&page=1

[10] *Id.*

[11] Letter from James Kohm, Assoc. Dir. for Enf't Bureau of Consumer Prot., FTC, to E. Linwood Wright, III, Chairman of the Textile Bedding Comm. of the Nat'l Textile Ass'n (Aug. 2, 2005), *available at* https://www.ftc.gov/sites/default/files/documents/advisory_opinions/national-textileassociation/natltextileassn.pdf and attached hereto as **Exhibit B**.

[12] *Id.*

[13] *Id.*

CLASS ACTION COMPLAINT

19. In a letter to the FTC, the American Textile Manufacturer's Institute ("ATMI") also opined that the ASTM D3775 method is "long-accepted industry standard for determining count" and the "method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product."[14] The ATMI further opined that it believes "that plied yarns are to be properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a '250 thread count fabric, even though each thread of yarn contained four plies twisted together.' It would be false and misleading to describe this as a 1000 thread count product."[15]

20. Despite knowing the long-standing industry standard, Defendant deviated from the traditional thread counting standards to deceive consumers. The Sealy Products were advertised and sold with inflated thread counts.

21. Consumers, like Plaintiff, relied on Defendant's advertising and labeling statements set forth above, including the "1250 Thread Count" labeling statement.

---

[14] Letter from Carlos Moore, Exec. Vice Pres. of ATMI, to Steve Ecklund, FTC (Jan. 31, 2002), *available at* https://www.ftc.gov/sites/default/files/documents/advisory_opinions/american-textile-manufacturers-institute/americantextilemanuinstitute.pdf and attached hereto as **Exhibit C**.

[15] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**PLAINTIFF'S EXPERIENCES**

22.    Plaintiff Kenya Nelson purchased a set of Defendant's Sealy bed sheets in approximately January of 2023 from a JC Penny store located in Escondido, California. Plaintiff Nelson saw and relied on the "1250 Thread Count" claim on the label of the Product. Plaintiff Nelson also saw and relied on additional labeling statements indicating that the Product is high-quality and superior to competing products, such as "premium comfort," "premium modal blend fabric," "luxuriously soft & comfortable," "superior moisture wicking," and "keeps you cool dry and comfortable." Plaintiff Nelson would not have purchased the Product, or would have paid less for the Product, had she known that the Product has a lower than advertised thread count. As a result, Plaintiff Nelson suffered injury in fact when she spent money to purchase the Product she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff Nelson has not purchased the Product after learning that the Products only have a thread count of 234 threads. Plaintiff Nelson desires to purchase the Products again if the labels of the products were accurate and if the products actually had the advertised thread count. However, as a result of Defendant's ongoing misrepresentations, Plaintiff Nelson is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

**PLAINTIFF AND PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

23.    Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. With all the other bed sheet products on the market with accurate thread count claims, a reasonable consumer would choose to purchase a product without inflated thread count claims.

24.    Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products have an inflated thread count. Defendant charges a premium for the Products. Because Defendant represents that the Products have a "1250 Thread Count," Defendant is able to charge consumers more money for the Products.

25.     Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. As a consequence of Defendant's deceptive advertising, Plaintiff brings causes of action for (1.) violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), (2.) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), and (3.) breach of express warranty.

**NO ADEQUATE REMEDY AT LAW**

26.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

27.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of

9

plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

28.    A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as having a higher thread count than they actually have. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating the actual thread counts of the products. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

29.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary

CROSNER LEGAL, P.C.

10

CROSNER LEGAL, P.C.

to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

30.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of the following Class:

> All persons who purchased the Sealy Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

31.   Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

32.   Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

33.   The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.   <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers

11

who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

35.   Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.   Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.   Whether Plaintiff and the Class are entitled to injunctive relief;

e.   Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

36.   Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

37.   Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will

be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

38.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

CROSNER LEGAL, P.C.

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

39.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

40.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

41.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

42.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

43.     Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

44.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

45.     At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

46. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

47. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

48. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products have a certain thread count. Defendant failed to disclose that the Products have a lower than advertised thread count. For example, the Products are labeled as having a "1250 Thread Count" but only have a thread count of 234 threads. This is a material omission as reasonable consumer would find the fact that the Products have a lower than advertised thread count to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

49. Defendant violated the CLRA because the Products were prominently advertised as having a certain thread count, but, in reality, the Products have a lower than advertised thread count. Defendant knew or should have known that

consumers would want to know the actual thread count of the Products. For example, Defendant placed the thread count representation on the front of the packaging. Defendant had exclusive knowledge of the actual thread counts of the Products, and Defendant failed to disclose this fact. Defendant actively concealed this material fact. The fact that the Products have a lower than advertised thread count is material to consumers because reasonable consumers would deem this fact important in determining whether to buy the Products.

50.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

51.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the  Products have characteristics which they do not have.

52.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

53.    Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend her complaint to seek damages and restitution under the CLRA.

54.    Pursuant to section 1780(d) of the CLRA, attached is an affidavit showing that this action was commenced in a proper forum.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

### SECOND CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

55.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

56.     Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

57.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

58.     Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

59.     Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products have a lower than advertised thread count) of which they had exclusive knowledge. While Plaintiff

17

CROSNER LEGAL. P.C.

and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, several of Defendant's competitors accurately label the thread counts of their linen products.

60.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the  Products have accurate thread count claims on the labels.

61.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

62.    Defendant's wrongful business practices and violations of the UCL are ongoing.

63.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

64.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all

money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

65.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

66.     Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

67.     As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products had a certain thread count as stated on the labels of the products. For example, the Products are labeled as having a "1250 Thread Count."

68.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products' thread count, quality, durability, and fitness of the products.

69.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

70.     In fact, the Products do not conform to Defendant's representations about the thread count because the Products have a lower thread count. By falsely representing the Products in this way, Defendant breached express warranties.

71.     Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

CROSNER LEGAL. P.C.

72.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the  Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the  Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the  Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

### REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

CROSNER LEGAL, P.C.

g.    Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: October 13, 2023

CROSNER LEGAL, P.C.

By:    /s/ *Michael T. Houchin*
MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

**<u>Affidavit Pursuant to Civil Code Section 1780(d)</u>**

I, MICHAEL T. HOUCHIN, declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.     This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.     Defendant American Textile Company, Inc. has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Sealy Products within the State of California.

4.     Plaintiff Nelson alleges that she purchased one of the products at issue in this District.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed October 13, 2023 at San Diego, California.


CROSNER LEGAL, P.C.


By:     */s/ Michael T. Houchin*
          MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

# EXHIBIT A



**Test Report**

Sealy 1250 Thread Count Premium
Comfort Sheet Set

**IDFL # 23-534996**

Crosner Legal PC
2 Oct 2023

| | |
|---|---|
| **Andrew Goodman** | andrew@crosnerlegal.com |
| **Crosner Legal PC** | Normal (8-10 Days) |
| 9440 Santa Monica Blvd., Ste. 301 | |
| Beverly Hills, California 90210 | **Arrival Date:** 2 Oct 2023 |
| United States | **Report Date:** 2 Oct 2023 |

| | |
|---|---|
| **Sample Type:** | Fabric (Queen Sheet Set) |
| **Shipped By:** | UPS 1Z8455V1YW1133811 |
| **Sample Identification:** | Sealy 1250 Thread Count Premium Comfort Sheet Set |





This analysis represents (within normal testing variances) the test results from the sample(s) submitted. The analysis may not represent the entire lot, batch or production run. In no event shall IDFL be responsible or liable for any direct, indirect, punitive, incidental, special, or consequential damages whatsoever arising out of or connected with the use, misuse of, or reliance upon such results or analysis. This test report is subject to the Terms and Conditions found at www.idfl.com.

Approved By

**IDFL LABORATORY AND INSTITUTE**

| **IDFL SALT LAKE** | **IDFL EUROPE AG** | **IDFL CHINA** | **IDFL TAIPEI** | **IDFL VIETNAM** | www.idfl.com |
|---|---|---|---|---|---|
| 1455 South 1100 East | Zürcherstrasse 282 | Tonghui Mid-Road 688, Xiaoshan | 8F, No. 312, Sec. 2 | No. 8, B4 Street An Loi Dong Ward | Client 60072 |
| Salt Lake City, UT 84105 | CH-8500 Frauenfeld | Hangzhou Zhejiang 311200 | New Taipei Blvd, Xinzhuang Dist | District 2, Ho Chi Minh City | SL |
| USA | Switzerland | China | New Taipei City, Taiwan | Vietnam | Sample 1 of 1 |
| +1 801 467 7611 | +41 52 765 1574 | +86 571 8273 6561 | +886-2-8522-8790 | +84 282-244-7611 | |
| info@idfl.com | europe@idfl.com | china@idfl.com | taiwan@idfl.com | vietnam@idfl.com | Page 1 of 3 |



# Test Report

### Sealy 1250 Thread Count Premium Comfort Sheet Set

**IDFL # 23-534996**

Crosner Legal PC
2 Oct 2023



## Test Orders Summary

| Test | Test Component | Result | Expected Value |
|------|----------------|--------|----------------|
| **Thread Count ASTM D3775 17e1** | Threads Per in² | 234 | 1200 |

This analysis represents (within normal testing variances) the test results from the sample(s) submitted. The analysis may not represent the entire lot, batch or production run. In no event shall IDFL be responsible or liable for any direct, indirect, punitive, incidental, special, or consequential damages whatsoever arising out of or connected with the use, misuse of, or reliance upon such results or analysis. This test report is subject to the Terms and Conditions found at www.idfl.com.

**IDFL LABORATORY AND INSTITUTE**

Approved By

| **IDFL SALT LAKE** | **IDFL EUROPE AG** | **IDFL CHINA** | **IDFL TAIPEI** | **IDFL VIETNAM** | www.idfl.com |
|---|---|---|---|---|---|
| 1455 South 1100 East | Zürcherstrasse 282 | Tonghui Mid-Road 688, Xiaoshan | 8F, No. 312, Sec. 2 | No. 8, B4 Street An Loi Dong Ward | Client 60072 |
| Salt Lake City, UT 84105 | CH-8500 Frauenfeld | Hangzhou Zhejiang 311200 | New Taipei Blvd, Xinzhuang Dist | District 2, Ho Chi Minh City | SL |
| USA | Switzerland | China | New Taipei City, Taiwan | Vietnam | Sample 1 of 1 |
| +1 801 467 7611 | +41 52 765 1574 | +86 571 8273 6561 | +886-2-8522-8790 | +84 282-244-7611 | |
| info@idfl.com | europe@idfl.com | china@idfl.com | taiwan@idfl.com | vietnam@idfl.com | Page 2 of 3 |



**Test Report**

Sealy 1250 Thread Count Premium
Comfort Sheet Set

**IDFL # 23-534996**

Crosner Legal PC
2 Oct 2023

| Thread Count ASTM D3775 17e1 | |
|---|---|
| Warp Ends Per in | **174** |
| Fillings Picks Per in | **60** |
| Threads Per in² | **234** |



**Dark Lines = Warp Ends**
**Light Lines = Filling Picks**

**NOTE: This illustration is only a representation of the fabric for this sample. It may or may not be exactly equivalent to the actual fabric submitted. It is only intended to aid in explaining results.

This analysis represents (within normal testing variances) the test results from the sample(s) submitted. The analysis may not represent the entire lot, batch or production run. In no event shall IDFL be responsible or liable for any direct, indirect, punitive, incidental, special, or consequential damages whatsoever arising out of or connected with the use, misuse of, or reliance upon such results or analysis. This test report is subject to the Terms and Conditions found at www.idfl.com.

Approved By

**IDFL LABORATORY AND INSTITUTE**

| IDFL SALT LAKE | IDFL EUROPE AG | IDFL CHINA | IDFL TAIPEI | IDFL VIETNAM | www.idfl.com |
|---|---|---|---|---|---|
| 1455 South 1100 East | Zürcherstrasse 282 | Tonghui Mid-Road 688, Xiaoshan | 8F, No. 312, Sec. 2 | No. 8, B4 Street An Loi Dong Ward | Client 60072 |
| Salt Lake City, UT 84105 | CH-8500 Frauenfeld | Hangzhou Zhejiang 311200 | New Taipei Blvd, Xinzhuang Dist | District 2, Ho Chi Minh City | SL |
| USA | Switzerland | China | New Taipei City, Taiwan | Vietnam | Sample 1 of 1 |
| +1 801 467 7611 | +41 52 765 1574 | +86 571 8273 6561 | +886-2-8522-8790 | +84 282-244-7611 | |
| info@idfl.com | europe@idfl.com | china@idfl.com | taiwan@idfl.com | vietnam@idfl.com | Page 3 of 3 |

# EXHIBIT B



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Division of Enforcement
Bureau of Consumer Protection

August 2, 2005

Mr. E. Linwood Wright, III
Chairman
Textile Bedding Committee
National Textile Association
6 Beacon Street, Suite 1125
Boston, MA 02108

Dear Mr. Wright:

Thank you for your letter requesting a Commission staff opinion regarding the appropriate way to disclose fabric "thread count" (yarns per square inch) on labels or in advertising for household textile products, such as bed sheets. Please note that this information is not required pursuant to the Textile Fiber Products Identification Act, 15 U.S.C. § 70 *et seq.*, and Commission rules and regulations under the Act, 16 C.F.R. Part 303. It is, however, governed by Section 5 of the FTC Act, which prohibits deceptive acts or practices. 15 U.S.C. § 45.

You state that the thread count is an important indicator of fabric quality for consumers who purchase textile bedding products, and that thread count has evolved over time as a key indicator used by consumers to make purchasing decisions. In addition, you state that it is generally understood that a higher thread count indicates a better product. Your letter describes the specific issue with regard to description of thread count as follows:

The common practice in the U.S. textile bedding industry for decades has been to count the number of threads in both the warp and filling directions. Yarns were counted as one yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.) In recent years, however, some textile bedding suppliers have changed the way they have determined thread count by counting plied yarns individually. This practice inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way. This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways.

Finally, you state that some of your member companies have experienced competitive disadvantage by using the traditional method of counting threads and are considering switching to the method of multiplying by the number of plies within a yarn, thus achieving a higher thread count. You ask for the staff's opinion as to whether the new method could violate Section 5 of the FTC Act.

Mr. E. Linwood Wright, III, page 2

You further note that ASTM, an international standards organization, has addressed this issue in its Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a. Section 9.1.4 instructs: "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.

Based upon the ASTM standard, as well as the information you have provided about standard industry practices with regard to disclosing thread count, we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased.

I also wish to bring to your attention a 1996 closing letter, placed on the FTC public record, terminating an investigation of possibly deceptive practices in connection with the packaging of down comforters. In that instance, the staff determined that no further Commission action was warranted when the company notified the staff that it was changing its package product description from "finely woven 760 threads per sq. inch" to "finely woven 380 2-ply fabric." A copy of this closing letter is attached.

In accordance with Section 1.3(c) of the Commission's Rules of Practice and Procedure, 16 C.F.R. § 1.3(c), this is a staff opinion only and has not been reviewed or approved by the Commission or by any individual Commissioner, and is given without prejudice to the right of the Commission later to rescind the advice and, where appropriate, to commence an enforcement action. In accordance with Section 1.4 of the Commission's Rules of Practice and Procedure, 16 C.F.R. § 1.4, your request for advice, along with this response, will be placed on the public record.

We appreciate your taking the time to write to us. Please feel free to call Steve Ecklund at 202-326-2841 if you have any further questions.

Sincerely yours,

James Kohm
Associate Director for Enforcement

Enclosure



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Division of Enforcement
Bureau of Consumer Protection

April 8, 1996

Jeffrey Goldman, President
California Feather & Down Corporation
11842 S. Alameda St.
Lynwood, CA 90262

        Re:  California Feather & Down Corporation, 9523373

Dear Mr. Goldman:

    The Commission has conducted an investigation involving your
company's possible violation of the Federal Trade Commission Act
through the use of unfair acts or deceptive acts or practices in
connection with the packaging of down comforters.

    By letter dated March 12, 1996, Mr. N. Frank Wiggins stated
that your company is removing the reference to "760" from the
packaging and labeling of your "White Knights 760 White Goose
Down Comforter."  Further, Mr. Wiggins' August 12, 1995, letter
stated that the company had revised the text of the packaging for
this product to say that the White Knights 760 White Goose Down
Comforter contains "finely woven 380 2-ply fabric. . . ."  The
former packaging had stated "finely woven 760 threads per sq.
inch. . . ."

    Upon further review of this matter, it now appears that no
further action is warranted by the Commission at this time.
Accordingly, the investigation has been closed.  This action is
not to be construed as a determination that a violation has not
occurred, just as the pendency of an investigation should not be
construed as a determination that a violation has occurred.  The
Commission reserves the right to take such further action as the
public interest may require.

                              Sincerely,

                              Elaine D. Kolish
                              Associate Director

cc:  N. Frank Wiggins, Esq.
     Venable, Baetjer, Howard & Civiletti, LLP
     1201 New York Avenue, NW, Suite 1000
     Washington, DC  20005-3917

# National Textile Association

**6 Beacon Street • Suite 1125 • Boston, Massachusetts 02108**
**617 542-8220 • info@nationaltextile.org • www.nationaltextile.org • 617 542-2199 fax**

# ORIGINAL

May 23, 2005
By FAX 202-326-2496

FEDERAL TRADE COMMISSION
RECEIVED DOCUMENTS
218296
JUN 1 5 2005
517516
SECRETARY

Mr. Donald S. Clark, Secretary
U.S. Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Re:     Request for Staff Opinion

Dear Mr. Secretary:

Pursuant to 16. C.F.R. Section 1, the National Textile Association ("NTA")
requests a staff opinion from the Federal Trade Commission (the "Commission")
regarding the method for determining thread count in textile bedding products.
The NTA is the largest trade association representing the U.S. Textile Industry and its
suppliers, and consists of about 125 companies that spin yarns; manufacture fabrics;
dye, finish and print fabrics; and cut and sew top-of-the-bed textile products.

The thread count (number of threads per square inch of fabric) is an important indicator
of fabric quality for consumers who purchase textile bedding products such as bed
sheets. Thread count has evolved over time as a key indicator used by consumers to
make purchasing decisions. Generally, it is perceived that the higher the thread count,
the better the end product.

The common practice in the U.S. textile bedding industry for decades has been to count
the number of threads in both the warp and filling directions. Yarns were counted as one
yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn
is one yarn that has been created by twisting two or more yarns together.) In recent
years, however, some textile bedding suppliers have changed the way they have
determined thread count by counting plied yarns individually. This practice inflates the
thread count numbers to levels which double or triple (or more) the thread count as
determined by the long standing, traditional way. This practice has also created
confusion in the marketplace and has caused consumers to compare thread counts that
may have been calculated in two dramatically different ways.

NON-PUBLIC

Mr. Donald S. Clark, Secretary
U.S. Federal Trade Commission
May 23, 2005
Page 2

The ASTM, an international standards writing organization, addressed the thread count
issue in standard D3775-03a (see Section 9.1.4) which states that ends and picks are
counted as single units regardless of whether they are comprised of singles or plied
yarns. ASTM committee D13.63 on home furnishings is working on a specific definition
of thread count for sheets and similar bedding products that would also treat multi-ply
yarns as one yarn, though that process is still in the preliminary stage.

Because of the competitive disadvantage imposed on companies that use the traditional
way of not considering yarn plies in the final count, some of our members are
contemplating changing over to calculating thread count where each ply within a yarn is
counted. We ask the Commission's staff for its opinion on whether such a change would
be in violation of 15 U.S.C. Section 45(a)(1) of the Federal Trade Commission Act.

We will be pleased to provide any additional information to the Commission staff as it
addresses this issue which affects the many consumers who use thread count
information to make purchase decision for textile bedding products.

Sincerely,

E. Linwood Wright

E. Linwood Wright, III
Chairman,
Textile Bedding Committee

# EXHIBIT C



FEDERAL TRADE COMMISSION

**JAN 3 1 2002**

DIVISION ENFORCEMENT

**AMERICAN TEXTILE
MANUFACTURERS INSTITUTE**

January 31, 2002

Mr. Steve Ecklund
Federal Trade Commission
Division of Enforcement
Washington, DC  20580

                 Re:    Request for FTC Staff
                             <u>Opinion on Yarn Count</u>

Dear Mr. Ecklund:

It has come to our attention again that some companies are marketing bed sheets and pillowcases to U.S. consumers where extremely high yarn or thread counts are claimed – some as high as 1000 count.  We believe these products are mislabeled, creating deceptive information for the consumer.

Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better when, in fact, they might be inferior because of the method used to determine the count.  We wrote to the Commission regarding this same issue on February 24, 1997 (copy enclosed) and provided a fabric sample and independent lab report verifying our position.

In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric.  A plied yarn is one in which two or more yarns are twisted together to form a single strand.

ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American



1130 Connecticut Ave., NW • Suite 1200 • Washington, DC  20036-3954
202-862-0500 • fax:  202-862-0570 • http://www.atmi.org
fax on demand:  202-862-0572



public into making decisions to purchase items, based on false and misleading information.

ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) is the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.

ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or mis-leading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and mis-leading to describe this as a 1000 thread count product.

ATMI requests a staff opinion from the Federal Trade Commission on this issue. We believe that manufacturers, importers and retailers of bed sheets should rely on the ASTM D3775-96 standard test method to determine count.

Sincerely,

Carlos Moore

Carlos Moore
Executive Vice President

Enclosure