CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

KENYA NELSON individually, and on behalf of all others similarly situated,

Plaintiff,

v.

AMERICAN TEXTILE COMPANY, INC.

Defendant.

Case No. 3:23-cv-01879-CAB-SBC

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Defendant American Textile Company, Inc. ("Defendant" or "American Textile") manufactures, distributes, markets, and sells a line of bed sheet products under the Sealy brand name that are labeled as having a "1250 Thread Count." (the "Sealy Products" or "Products"). "Thread count is the number of threads in a square inch of fabric, and a higher thread count is considered superior."[1] Defendant capitalizes on consumer demand for superior bed sheet products by advertising that the Sealy Products have a high thread count. Defendant also reinforces the notion that the Products are high-quality by labeling them as being "Premium Comfort."

2. Unfortunately, Defendant's labeling is false and misleading. Independent laboratory testing using the industry standard testing methodology revealed that the Sealy Products only have a thread count of 234.[2] Accordingly, Defendant's thread count claim is inaccurate.

3. Defendant's false and misleading representations that the Products have a certain thread count is likely to deceive reasonable consumers. Defendant's advertising leads consumers to believe that the Products actually have a thread count of 1250 threads, and thus, are higher quality, more durable, and softer than other competing bed sheet products that have lower thread counts. Defendant charges a premium for the Products, but consumers who have purchased the Products received inferior products that have a lower than advertised thread count.

4. Plaintiff Kenya Nelson ("Plaintiff") purchased a Sealy Product and now brings this class action seeking redress for Defendant's false advertising and deceptive conduct.

---

[1] *Are Shoppers Short-Sheeted by Thread Count?*, ABC NEWS (Nov. 22, 2002), *available at* https://abcnews.go.com/GMA/story?id=125380&page=1

[2] *See* **Exhibit A** attached hereto.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Sealy Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one of the Products within this District.

CROSNER LEGAL, P.C.

## PARTIES

8. Defendant American Textile Company, Inc. is a Pennsylvania corporation that maintains its principal place of business at 10 N. Linden Street, Duquesne, Pennsylvania 15110. Defendant was the manufacturer, distributor, marketer, and seller of the Sealy Products throughout the class period.

9. Plaintiff Kenya Nelson is a resident of San Diego County, California. Plaintiff purchased a Sealy Product during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

## FACTUAL ALLEGATIONS

### THE SEALY PRODUCTS

10. Defendant labels the Sealy Products as having a "1250 Thread Count" as shown below:



11. The labels of the Sealy Products lead consumers to believe that Defendant's bed sheets are high-quality and superior to other brands because of the high thread count. For example, the front label of Products state "1250 Thread Count Sheet Set" and "Premium Comfort." Defendant also makes additional labeling statements indicating the Products are high-quality and superior to competing products, such as "premium modal blend fabric," "luxuriously soft & comfortable," "superior moisture wicking," and "keeps you cool dry and comfortable" as shown below.




**TESTING REVEALS THAT DEFENDANT'S THREAD COUNT CLAIMS ARE FALSE**

12. Independent laboratory testing shows that Defendant's thread count claims are false.[3]

13. On October 2, 2023, a Sealy Product labeled as having a "1250 Thread Count" was sent to the IDFL Laboratory and Institute ("IDFL") in Salt Lake City, Utah for laboratory analysis. IDFL "is one of the global leaders in

[3] *See* **Exhibit A** attached hereto.

auditing and testing for filled textiles" and "one of the largest filled-textile laboratories in the world."[4]

14. IDFL analyzed the Product for its thread count content using the D3775 method developed by the American Society for Testing and Materials ("ASTM"). The ASTM D3775 method is an industry standard test for determining the thread count of linen products.[5] This standard requires that individual wrap ends and filling picks are counted as "single units regardless of whether they are comprised of single or plied components."

15. IDFL determined that the Product had a thread count of only 234 threads despite being labeled as having a "1250 Thread Count." Accordingly, Defendant's thread count claims are false and misleading.

## REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE THREAD COUNT CLAIMS

16. Consumers who purchase bed sheets rely on a product's thread counts as an indication of quality.[6] Products with higher thread counts are more expensive than products with lower thread counts.[7] This is because "[h]igher-thread-count sheets are made with finer (thinner) yarns. The more yarns that fit into a square inch, the smoother, denser, and more durable the fabric. Fine yarn is also more expensive to produce, thus resulting in pricier sheets."[8] "When it comes to buying

---

[4] https://idfl.com/about/

[5] *Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics*, available at https://www.astm.org/d3775-17e01.html

[6] *Are Shoppers Short-Sheeted by Thread Count?*, ABC NEWS (Nov. 22, 2002), *available at* https://abcnews.go.com/GMA/story?id=125380&page=1

[7] *Id.*

[8] Jackie Reeve, *What Is a Good Thread Count for Sheets?*, NEW YORK TIMES (Updated Feb. 11, 2020), *available at* https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/

bedding, the conventional wisdom goes like this: The higher a sheet's thread count, the higher the quality, and, of course, the higher the price."[9]

17. However, some manufacturers "exaggerate the number of threads per square inch of fabric. The problem is that many threads are made up of multiple strands of yarn and manufacturers count each strand when they calculate the thread count."[10] Laboratory testing has revealed that Defendant has likewise deceptively exaggerated the number of threads per square inch in the Sealy Products. This is misleading because the industry standard way to count threads is to "count the number of threads in both the warp and filling directions" and to count plied yarns as "one yarn, regardless of whether the yarn was a single ply or multi-ply yarn. (A multi-ply yarn is one yarn that has been created by twisting two or more yarns together.)" in accordance with the ASTM D3775 standard.[11]

18. In a letter to the National Textiles Association ("NTA"), the Federal Trade Commission ("FTC") acknowledged that the ATSM D3775 method applies "standard industry practices."[12] The FTC stated that "[b]ased upon the ASTM standard, as well as the information [provided by the NTA] about standard industry practices with regard to disclosing thread count, we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[13]

---

[9] *The Truth Behind Thread Counts*, ABC NEWS (March 22, 2006), *available at* https://abcnews.go.com/GMA/Moms/story?id=1751253&page=1

[10] *Id.*

[11] Letter from James Kohm, Assoc. Dir. for Enf't Bureau of Consumer Prot., FTC, to E. Linwood Wright, III, Chairman of the Textile Bedding Comm. of the Nat'l Textile Ass'n (Aug. 2, 2005), *available at* https://www.ftc.gov/sites/default/files/documents/advisory_opinions/national-textileassociation/natltextileassn.pdf and attached hereto as **Exhibit B**.

[12] *Id.*

[13] *Id.*

19. In a letter to the FTC, the American Textile Manufacturer's Institute ("ATMI") also opined that the ASTM D3775 method is "long-accepted industry standard for determining count" and the "method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product."[14] The ATMI further opined that it believes "that plied yarns are to be properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a '250 thread count fabric, even though each thread of yarn contained four plies twisted together.' It would be false and misleading to describe this as a 1000 thread count product."[15]

20. Despite knowing the long-standing industry standard, Defendant deviated from the traditional thread counting standards to deceive consumers. The Sealy Products were advertised and sold with inflated thread counts.

21. Consumers, like Plaintiff, relied on Defendant's advertising and labeling statements set forth above, including the "1250 Thread Count" labeling statement.

---

[14] Letter from Carlos Moore, Exec. Vice Pres. of ATMI, to Steve Ecklund, FTC (Jan. 31, 2002), *available at* https://www.ftc.gov/sites/default/files/documents/advisory_opinions/american-textile-manufacturers-institute/americantextilemanuinstitute.pdf and attached hereto as **Exhibit C**.

[15] *Id.*

## PLAINTIFF'S EXPERIENCES

22. Plaintiff Kenya Nelson purchased a queen size set of Defendant's Sealy bed sheets in approximately January of 2023 from a JC Penny store located in Escondido, California. Plaintiff Nelson paid approximately $80 for the Product. Plaintiff Nelson saw and relied on the "1250 Thread Count" claim on the label of the Product. Plaintiff reasonably expected that Defendant used an industry standard thread counting methodology to determine that the Product has a "1250 Thread Count" instead of an obscure thread counting methodology that Defendant made up to deceive consumers.

23. Plaintiff Nelson also saw and relied on additional labeling statements indicating that the Product is high-quality and superior to competing products, such as "premium comfort," "premium modal blend fabric," "luxuriously soft & comfortable," "superior moisture wicking," and "keeps you cool dry and comfortable." However, after purchasing the Product, Plaintiff discovered that the Product is lower quality, not as soft, and less durable than other bed sheet products that Plaintiff has purchased. For example, Plaintiff has purchased Bella Coterie bed sheets with a 400 thread count claim and found the Bella Coterie bed sheets to be higher quality, softer, and more durable than the Sealy bed sheets with the purported "1250 Thread Count."

24. Plaintiff Nelson would not have purchased the Product, or would have paid less for the Product, had she known that the Product has a lower than advertised thread count. As a result, Plaintiff Nelson suffered injury in fact when she spent money to purchase the Product she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff Nelson has not purchased the Product after learning that the Products only have a thread count of 234 threads. Plaintiff Nelson desires to purchase the Products again if the labels of the products were accurate and if the products actually had the advertised thread count. However, as a result of Defendant's ongoing misrepresentations, Plaintiff

Nelson is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

**PLAINTIFF AND PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

25. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. With all the other bed sheet products on the market with accurate thread count claims, a reasonable consumer would choose to purchase a product without inflated thread count claims.

26. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products have an inflated thread count. Defendant charges a premium for the Products. Because Defendant represents that the Products have a "1250 Thread Count," Defendant is able to charge consumers more money for the Products. Bed sheet products with advertised thread counts between 200 and 300 sell for a much lower price than the Sealy Products that are sold with a false "1250 Thread Count" claim. For example, a queen size set Essential Sateen bed sheets with a "300 Thread Count" are sold at pottery barn for $38.50.[16] A queen size set of 300 thread count sheets manufactured by Threshold are sold at Target for $25.00.[17] A 200 thread

---

[16] https://www.potterybarn.com/products/pb-essential-300-thread-count-flat-sheet/?sku=111252&cm_ven=PLA&cm_ite=111252_14751347029&cm_cat=Google&cm_pla=Local&gad_source=1&gclid=CjwKCAiA98WrBhAYEiwA2WvhOrQJMWWyJtfqahenAIuphIqFjUbomw3g8iNXp00Wk-Affhmm2sAOJBoCdAAQAvD_BwE (last visited Dec. 7, 2023).

[17] https://www.target.com/p/full-300-thread-count-ultra-soft-fitted-sheet-white-threshold-8482/-/A-14196334?ref=tgt_adv_xsp&AFID=google&fndsrc=tgtao&DFA=71700000012510694&CPNG=PLA_Bedding%2BShopping%7CBedding_Ecomm_Home&adgroup=SC_Threshold+Sheets&LID=700000001170770pgs&LNM=PRODUCT_GROUP&network=g&device=c&location=9031330&targetid=pla-



CROSNER LEGAL, P.C.

count queen size sheet set manufactured by Linteum Textile are sold at Walmart for $17.99.[18]

27. Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. As a consequence of Defendant's deceptive advertising, Plaintiff brings causes of action for (1.) violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), (2.) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), and (3.) breach of express warranty.

**NO ADEQUATE REMEDY AT LAW**

28. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

29. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair

1707406141084&ds_rl=1246978&ds_rl=1247068&gad_source=1&gclid=CjwKCAiA98WrBhAYEiwA2WvhOihuE2fkFB7mBGk6H1hJEc55ZVG_LDO0SlcloT5uvzL20ojaowiBIhoCQVsQAvD_BwE&gclsrc=aw.ds&preselect=14196336 (last visited Dec. 6, 2023).

[18] https://www.walmart.com/ip/Queen-Flat-Sheets-90-x110-1-Pack-White-200-Thread-Count/2669368209?wmlspartner=wlpa&selectedSellerId=9656 (last visited Dec. 7, 2023).

advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

30. A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as having a higher thread count than they actually have. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating the actual thread counts of the products. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

31. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is

at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of the following Class:

> All persons who purchased the Sealy Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

33. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

34. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.



CROSNER LEGAL, P.C.

35. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

36. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

37. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

38. Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

39. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff

seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

40. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

41. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

42. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

43. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

44. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

45. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

46. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

47. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

48. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

49. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

50. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products have a certain thread count. Defendant failed to disclose that the Products have a lower than advertised thread count. For example, the Products are labeled as having a "1250 Thread Count" but only have a thread count of 234 threads. This is a material omission as reasonable consumer would find the fact that the Products have a lower than advertised thread count to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

51. Defendant violated the CLRA because the Products were prominently advertised as having a certain thread count, but, in reality, the Products have a lower than advertised thread count. Defendant knew or should have known that consumers would want to know the actual thread count of the Products. For example, Defendant placed the thread count representation on the front of the packaging. Defendant had exclusive knowledge of the actual thread counts of the Products, and Defendant failed to disclose this fact. Defendant actively concealed this material fact. The fact that the Products have a lower than advertised thread count is material to consumers because reasonable consumers would deem this fact important in determining whether to buy the Products.

52. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

53. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

54. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein, actual damages, punitive damages, and attorneys' fees and costs.

55. Pursuant to California Civil Code section 1782, Plaintiff sent a pre-suit demand letter to Defendant on October 13, 2023 via certified mail, return receipt requested. Plaintiff's letter notified Defendant of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to

so act. More than 30 days have passed since Defendant received Plaintiff's letter and Defendant has failed to take any corrective action. Accordingly, Plaintiff seeks actual damages, punitive damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

56. Pursuant to section 1780(d) of the CLRA, attached is an affidavit showing that this action was commenced in a proper forum.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

57. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

58. Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

59. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

60. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

61. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products have a lower than advertised thread count) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, several of Defendant's competitors accurately label the thread counts of their linen products.

62. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products have accurate thread count claims on the labels.

63. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

64. Defendant's wrongful business practices and violations of the UCL are ongoing.

65. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of

calculation, and Plaintiff and the Class seek interest in an amount according to proof.

66. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## THIRD CLAIM FOR RELIEF

## Breach of Express Warranty

67. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

68. Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

69. As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products had a certain thread count as stated on the labels of the products. For example, the Products are labeled as having a "1250 Thread Count."

70. Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products' thread count, quality, durability, and fitness of the products.

71. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

72. In fact, the Products do not conform to Defendant's representations about the thread count because the Products have a lower thread count. By falsely representing the Products in this way, Defendant breached express warranties.

73. Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

74. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: December 11, 2023

CROSNER LEGAL, P.C.

By: /s/ *Michael T. Houchin*
MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, MICHAEL T. HOUCHIN, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3. Defendant American Textile Company, Inc. has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Sealy Products within the State of California.

4. Plaintiff Nelson alleges that she purchased one of the products at issue in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed December 11, 2023 at San Diego, California.

CROSNER LEGAL, P.C.

By: */s/ Michael T. Houchin*
MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com